<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| QUALITY LINE EXPRESS, LLC,<br><br>         Plaintiff,<br><br>         v.<br><br>LITTLE CHUBBY ONE, INC., *et al.*,<br><br>         Defendants. | Civil Action No. 22-7456 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Plaintiff Quality Line Express, LLC's ("Plaintiff") unopposed Motion for Default Judgment against Defendants Little Chubby One, Inc. ("LCO") and Isak B. Stern ("Stern") (collectively, "Defendants").[1] (ECF No. 35.) The Court has carefully considered Plaintiff's submissions and decides the matter without oral argument under Local Civil Rule 78.1(b). For the reasons set forth herein, Plaintiff's Motion is granted.

**I.  <u>BACKGROUND</u>**

**A.  Factual Background**

Plaintiff designs, manufactures, and sells products under the FRIENDLY CUDDLE brand.[2] (Compl. ¶ 7, ECF No. 1.) One such product is a weighted lap pad in the shape of a dog ("Plaintiff's

---

[1] Plaintiff and Stern have stipulated to Stern's dismissal from this action, with prejudice and without costs. (ECF Nos. 52, 53.) The Court, therefore, only considers the instant Motion as against LCO.

[2] "Plaintiff is the owner of federal registrations for the FRIENDLY CUDDLE mark, including U.S. Trademark Registration No. 6,847,099." (Compl ¶ 8.)

Product"). (*Id.* ¶ 9.) "Plaintiff owns all right, title, and interest in and to the copyright in the original sculpture of Plaintiff's Product." (*Id.* ¶ 10 (Copyright Registration No. VA 2-330-797).) Plaintiff also "owns all right, title, and interest in and to the copyright in the photograph of Plaintiff's Product" ("Plaintiff's Photograph"), which is recreated below. (*Id.* ¶¶ 8, 11.)



(*Id.* ¶ 8.) Plaintiff has been selling Plaintiff's Product from an Amazon storefront since at least February 11, 2020. (*Id.* ¶¶ 12-13.)

In or around November 2022, Plaintiff became aware that LCO was also selling a product on Amazon (ASIN B0BNJLZ936) ("Defendants' Product" or "'936 Listing"), which Plaintiff alleges has "the identical sculptural design as Plaintiff's Product." (*Id.* ¶ 14.) Plaintiff further alleges that LCO modified Plaintiff's Photograph by removing the tag with brand identifying information sewn into Plaintiff's Product and posted five photos using that image to its own Amazon listing (Images A-E shown below). (*Id.* ¶¶ 14-16.)



Plaintiff's Photograph        Image A

2

**Image B**          **Image C**

**Image D**          **Image E**



(*Id.* ¶¶ 15-16.) Plaintiff adds a sixth photo in a declaration attached to the instant motion, which

shows the packaging that Defendants use for the '936 Listing, as shown below.

**Image F**



3

(Decl. of Abraham Klitnick in Support of Mot. for Default J. ¶ 12 ("Klitnick Decl."), ECF No. 35-2.)

In 2022, Plaintiff filed a report with Amazon claiming that Defendants' Product infringed on Plaintiff's copyright. (*Id.* ¶ 20.) Amazon advised Plaintiff on or around December 15, 2022, that Stern, on behalf of LCO, had filed a counter-notice. (*Id.*)

### B.    Procedural Background

Plaintiff filed a Complaint against Defendants on December 22, 2022, for damages and injunctive relief, alleging copyright infringement under 17 U.S.C. § 501 (Count I), and intentional removal of copyright management information ("CMI") under 17 U.S.C. § 1202 (Count II). (*See generally* Compl.) Before Plaintiff filed its action in the District of New Jersey, on December 16, 2022, Defendants filed an action in the United States District Court for the Southern District of New York asserting five causes of action: (1) declaratory judgment for non-infringement under federal copyright; (2) product disparagement; (3) tortious interference with business relations; (4) unfair competition; and (5) defamation. (Pl.'s Moving Br. 7, ECF No. 35-1); *Little Chubby One, Inc. v. Quality Line Express, LLC et al.*, No. 22-10638 (S.D.N.Y. 2022) ("SDNY Action"). Ultimately, the SDNY Action was transferred to this District, which Stern and LCO consented to, on the record, in the SDNY Action. (Pl.'s Moving Br. 7.) Once in this District, and after a conference with the Court on June 8, 2023, the parties agreed to consolidate the SDNY Action with the instant case, and, as a result, Defendants: (1) dismissed the SDNY Action; and (2) amended their answer in this case to assert counterclaims. (*Id.*; ECF No. 17.)

On August 28, 2023, Plaintiff filed a motion to dismiss Defendants' counterclaims. (ECF No. 22.) Defendants' counsel did not oppose this motion, but rather filed a motion to withdraw as counsel one month later. (ECF No. 24.) The Court entered a letter order giving LCO the explicit

opportunity to object to its counsel's motion to withdraw and letting LCO know that the Court may enter default against it if Defendants failed to retain new counsel.[3] (ECF No. 25.) LCO, however, did not oppose its counsel's motion to withdraw, and the Court thereafter relieved counsel for LCO and provided LCO the opportunity to retain new counsel by January 5, 2024 or else face the entry of default. (ECF No. 27.) LCO failed to retain new counsel, and the Clerk of the Court entered an Entry of Default against LCO on January 8, 2024. (*See* ECF No. 29.) On April 8, 2024, the Honorable Tonianne J. Bongiovanni, U.S.M.J., issued a report and recommendation,[4] which recommended dismissing LCO's counterclaims with prejudice due to LCO's default based on its failure to obtain counsel and ordered Plaintiff to file a motion for default judgment against Defendants by May 24, 2024. (ECF No. 32.) Plaintiff timely filed the instant Motion for Default Judgment, which remains unopposed. (ECF No. 35.) LCO has not communicated with the Court since the withdrawal of its counsel.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 55[5] provides that a party may obtain a default judgment by first obtaining an entry of default and then "apply[ing] to the court for a default judgment." Fed. R. Civ. P. 55(a)-(b). It is left to the district court's discretion to determine whether to enter default judgment. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). A default judgment is a disfavored remedy because it does not resolve a plaintiff's claims on the merits. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J.

---

[3] Because LCO is a corporate entity, it must appear through licensed counsel and cannot represent itself pro se. (*See* ECF No. 25 1-2 (citing *Simbraw, Inc. v. United States*, 367 F.2d 373, 374 (3d Cir. 1966) (holding that corporations may not proceed pro se).)

[4] This Court adopted the report and recommendation in full on November 21, 2024. (ECF No. 54.)

[5] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three analyses guide the Court's discretion. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *2 (D.N.J. Aug. 12, 2022). *First*, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *Third*, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987)).

## III.    <u>DISCUSSION</u>

### A.    Default Judgment

As an initial matter, "when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir.

1986)). "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I*, 908 F.2d at 1149 (internal quotation marks omitted). In addition,

> [w]hen a court considers personal jurisdiction in the posture of a default judgment, "although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a prima facie showing," and "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain."

*D'Onofrio*, 430 F. Supp. 2d at 438 (quoting *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)).

Here, the Court is satisfied that it has subject-matter jurisdiction because the action arises under copyright law, 17 U.S.C. § 101 et seq., which gives this Court federal question subject-matter jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The question of personal jurisdiction, however, requires a closer analysis. Plaintiff argues in its Motion for Default Judgment that LCO waived its objection to personal jurisdiction by agreeing to transfer and consolidate this case with the SDNY Action. (*See* Pl.'s Moving Br. 11-12.) LCO has not opposed this argument to date.

Personal jurisdiction can be waived as a result of a party's actions or inaction. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). The Court agrees with Plaintiff that LCO waived any objection to personal jurisdiction by consenting to transfer and consolidate the case in this District. In the SDNY Action, LCO consented on the record to the transfer. SDNY Action, ECF No. 22 ("[LCO] consented on the record to [Plaintiff's] requested transfer."). Once the case was transferred to this District, LCO and Plaintiff "agreed to consolidate the Transferred Action and the instant action before this Court for the sake of judicial efficiency and consistent resolution of all related claims." (ECF No. 14.) A party that "demonstrates a

willingness to engage in extensive litigation in the forum" or "seeks affirmative relief from a court . . . normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019) (first quoting *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994); then quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999)).

Even if LCO's consent to transfer and consolidate the SDNY Action was not sufficient to constitute a waiver of personal jurisdiction, the Court also finds that LCO's failure to challenge this lawsuit at all in nearly eleven months additionally waived any objection to personal jurisdiction.[6] *See Gambone v. Lite-Rock Drywall Corp.*, No. 01-1071, 2003 WL 21891584, at \*5 (E.D. Pa. Aug. 7, 2003) (finding that the "defendant . . . waived any objection to in personam jurisdiction by failing to take any steps to challenge th[e] lawsuit for a period of [twenty-one] months after the entry of Default Judgment"), *aff'd*, 124 F. App'x 78 (3d Cir. 2005).

### 1.    *Service of Process*

Plaintiff argues that LCO was properly served, and in any event, LCO has waived any objection to service. (Pl.'s Moving Br. 11.) At the outset, the Court notes that there is no certificate of service on the docket or attached to Plaintiff's briefing. (*See id.*) The Court nonetheless finds

---

[6] The Court recognizes that LCO submitted a motion to dismiss or transfer venue before the SDNY Action was transferred to this District, and in that motion LCO did not raise lack of personal jurisdiction as a defense. (*See* ECF No. 6.) The Court also recognizes that in its Answer, LCO provided a list of defenses, including that "[t]he claims are barred for lack of personal jurisdiction." (Answer 4, ECF No. 12.) Without making any comment on whether that objection was timely, the Court finds that LCO's failure to pursue this defense in any meaningful way, by taking no action in over a year, additionally indicates waiver of this defense. *See In re Asbestos*, 921 F.3d at 107 (finding that "even if the [defendants] had not waived their personal jurisdiction defenses by filing answers or through other conduct consistent with waiver, they subsequently forfeited the defense by failing to diligently pursue it").

that LCO has waived any argument of improper service upon filing its Answer (ECF No. 12) and subsequent Amended Answer (ECF No. 17) without asserting any objection to process or service of process. *Days Inns Worldwide, Inc. v. Platinum Hosp. Grp., LLC*, No. 10-6454, 2012 WL 117118, at *2 (D.N.J. Jan. 13, 2012) (finding on a motion for default judgment that a defendant waived any objection to service of process, despite not being served with the summons and complaint, where "[the defendant] filed an [a]nswer to the [c]omplaint and did not object to the timeliness or effectiveness of service under Rule 12(b)(5)").

Courts have recognized that "[t]he fundamental purpose for requiring proper service of process is to ensure that the defendant receives notice of the commencement of the legal action and is afforded an opportunity to present his objections." *Stout St. Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 647 (E.D. Pa. 2012) (quoting *Perlberger v. Caplan & Luber, LLP*, 152 F. Supp. 2d 650, 653 (E.D. Pa. 2001)). Here, the Court is satisfied that LCO had proper notice of the suit, as demonstrated by LCO's withdrawn motion to dismiss (ECF No. 6), Answer (ECF No. 12), and Amended Answer (ECF No. 17). *W. Trenton Hardware, LLC v. Brooklyn Textiles, LLC*, No. 21-17662, 2024 WL 4263209, at *3 (D.N.J. Sept. 23, 2024) (finding default judgment appropriate where defendant "waived any insufficient service of process defense, and the court [wa]s satisfied that Defendant ha[d] proper notice of th[e] matter" (citing *Days Inn Worldwide, Inc*, 2012 WL 117118, at *2)); *see also Gambone*, 2003 WL 21891584, at *5 (explaining that "when the party has received actual notice of the suit there is no due process problem in requiring [the party] to object to the ineffective service within the period prescribed by Rule 12(h)(1) and the defense is one that he certainly can waive if wishes to do so").

In addition to being on notice of this suit, LCO was on notice that the Court would enter a Clerk's default, and yet LCO did not take any action to prevent it. (ECF No. 27 ("If new counsel

does not enter a timely appearance . . . default shall be entered against [LCO].").) In addition, LCO has not taken any action to prevent the entry of default judgment. As such, the Court recognizes LCO's "considered decision to allow the entry of default judgment," and it must now "live with its consequences." *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984). Taking these actions together, the Court finds that LCO has waived any objection to service, and the Court may continue with its analysis.

### 2.      *Legitimate Causes of Action*

Having determined that LCO waived service, the Court next evaluates "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008). Plaintiff's Complaint alleges two causes of action: (1) copyright infringement under 17 U.S.C. § 501; and (2) intentional removal of CMI under 17 U.S.C. § 1202. (Compl. ¶¶ 21-41.) The Court analyzes each claim in turn.

### a.      **Copyright Infringement**

To establish direct copyright infringement, a plaintiff must demonstrate: (1) "ownership of a valid copyright" and (2) "unauthorized copying." *Fish Kiss LLC v. N. Star Creations, LLC*, No. 17-8193, 2018 WL 3831335, at *6 (D.N.J. Aug. 13, 2018) (quoting *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 135 (3d Cir. 2014)). Here, Plaintiff alleges that it "owns all right, title, and interest in and to the copyright in the original sculpture of Plaintiff's Product, which is the subject of a United States Copyright Registration No. VA 2-330-797, dated December 14, 2022." (Compl. ¶ 10.) Plaintiff also attaches a copy of this registration to the Complaint. (Ex. 1 to Compl., ECF No. 1-1.) Plaintiff has therefore satisfied the first element of a copyright infringement claim, as "[a] certificate of registration constitutes prima facie evidence of the validity of the

10

copyright and ownership of the registered work." *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 299 n.18 (3d Cir. 2004) (citing 17 U.S.C. § 410(c); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290-91 (3d Cir. 1991)).

Second, Plaintiff's Complaint alleges that "Defendants infringed the copyright in Plaintiff's Product by reproducing identical copies in the form of [Defendants' Product] and distributing those copies by sales to customers" and that Defendants' Product "was derived and copied from Plaintiff's Product without Plaintiff's authorization." (Compl. ¶ 23.) Taking these allegations as true, as the Court must do, Plaintiff has established that LCO used Plaintiff's copyright without Plaintiff's authorization. As such, Plaintiff has established a legitimate cause of action for copyright infringement under 17 U.S.C. § 501.

### b.    Intentional Removal of CMI

Plaintiff alleges that LCO violated the Digital Millennium Copyright Act ("DMCA") under 17 U.S.C. §§ 1202(b)(1)-(b)(3). (Compl. ¶ 36.) The DMCA "was intended to expand . . . the rights of copyright owners." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 303 (3d Cir. 2011). Section 1202(b) of the DMCA provides:

> No person shall, without the authority of the copyright owner or the law[:]
> (1) intentionally remove or alter any [CMI],
> (2) distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without authority of the copyright owner or the law, or
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority of the copyright owner or the law,
>> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). "[A] cause of action under § 1202 of the DMCA potentially lies whenever [CMI] . . . 'conveyed in connection with copies . . . of a work . . . including in digital form' is falsified or removed, regardless of the form in which that information is conveyed." *Murphy*, 650 F.3d at 305 (quoting 17 U.S.C. § 1202(c)).

CMI includes "[t]he name of, and other identifying information about, the copyright owner of the work . . . ." 17 U.S.C. § 1202(c)(3). Here, Plaintiff alleges that Plaintiff's Photograph included "identifying information about the copyright owner of Plaintiff's Photograph in the form of the tag on the product with the FRIENDLY CUDDLE brand" and includes in the Complaint the photograph at issue. (Compl. ¶¶ 9, 31.) Plaintiff owns a trademark registration in the FRIENDLY CUDDLE brand. (*See id.* ¶ 8.) Taking these allegations together as true, Plaintiff sufficiently alleges that "'branding' signaled authorship or copyright ownership over [Plaintiff's] work[]." *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, No. 17-8613, 2018 WL 4830091, at *4 (S.D.N.Y. Oct. 4, 2018); *see also GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 822 (N.D. Ill. 2017) (noting that "trademark information may constitute CMI if it is used to signal authorship of a copyrighted work"). As such, Plaintiff has established that there was CMI on Plaintiff's Product.

Next, Plaintiff must establish that LCO had "actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(b)). Here, the photographs provided in the Complaint demonstrate that LCO removed the tag with Plaintiff's brand name on it. (*See* Compl. ¶¶ 15, 16.) Plaintiff establishes LCO's actual knowledge of this removal of Plaintiff's CMI by alleging that LCO "altered the CMI in Plaintiff's Photograph by creating modified versions . . . which removed the identifying information about Plaintiff from Plaintiff's Photograph" and "Defendants intentionally altered Plaintiff's Photograph." (*Id.* ¶¶ 32, 35.)

Finally, Plaintiff must establish that LCO "knows or has reasonable grounds to know that the removal will 'induce, enable, facilitate, or conceal' an infringement." *Murphy*, 650 F.3d at 302 n.8; 17 U.S.C. § 1202(b). Here, Plaintiff alleges that "[LCO] intentionally altered Plaintiff's Photograph, and knowingly distributed the . . . [i]mages with removed CMI, in order to conceal that [LCO's] use of Plaintiff's Photograph was without authorization of Plaintiff and in violation of law." (*Id.* ¶ 35.) The photographs were plainly altered, as Plaintiff argues, "to intentionally conceal [LCO's] infringement of [Plaintiff's Product]."[7] (Pl.'s Moving Br. 19.) Plaintiff has therefore established that LCO had "reasonable grounds to know the removal or alteration will aid infringement." *Schiffer Pub., Ltd. v. Chron. Books, LLC*, No. 03-4962, 2004 WL 2583817, at *13 (E.D. Pa. Nov. 12, 2004); *see also Mantel v. Smash.com Inc.*, No. 19-6113, 2019 WL 5257571, at *2 (W.D.N.Y. Oct. 17, 2019) (finding that "[d]efendant had reason to know that removing the [CMI] would conceal an infringement—namely, its own—because doing so would hide the authorship of the photograph"). As such, the Court finds that Plaintiff has established a legitimate cause of action under § 1202(b) of the DMCA.

### 3.    *Appropriateness of Default Judgment*

In evaluating whether default judgment is appropriate, the Court looks at: (1) any meritorious defense; (2) whether Plaintiff suffers prejudice; and (3) Defendants' culpability in bringing about the default judgment. *Avon Food*, 2018 WL 372167, at *3 (citing *Bridges Fin. Grp., Inc. v. Beech Hill Co., Inc.*, No. 09-2686, 2011 WL 1485435, at *3 (D.N.J. Apr. 18, 2011)). First, LCO has not responded to Plaintiff's Motion for Default Judgment, and so has not presented the

---

[7] The fact that LCO used Images A-E on its Amazon storefront further "supports a finding that the removal of the CMI was intentional." *Phillips v. TraxNYC Corp.*, No. 21-528, 2023 WL 1987206, at *7 (E.D.N.Y. Feb. 14, 2023) (finding that defendant's use of an altered photograph to "advertise an item of jewelry" supported a finding that removing CMI was intentional), *R&R adopted*, No. 21-528, 2023 WL 2532066 (E.D.N.Y. Mar. 14, 2023).

Court with an argument on the instant motion providing for its own meritorious defense. Upon a closer review of the docket, LCO did submit counterclaims in this action. Those counterclaims, however, have since been dismissed with prejudice and so the Court does not consider them. (*See* ECF No. 54.) The Court, therefore, finds that LCO has no meritorious defense sufficient to prevent default judgment.

Second, Defendants stopped litigating this matter, and so "Plaintiff suffers prejudice if it does not receive a default judgment because it has no alternative means of vindicating its claim against the defaulting party." *Avon Food*, 2018 WL 372167, at *3 (citing *Asher*, 2006 WL 680533, at *2).

Third, LCO is culpable in bringing about this default judgment, as it seems that LCO has "actively weighed the benefits of not participating" and has not otherwise provided any "reasonable basis for noncompliance within the time specified." *De Lage Landen Fin. Servs., Inc. v. QC Labs*, 345 F.R.D. 123, 136 (E.D. Pa. 2023) (quoting *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, No. 09-6480, 2012 WL 12785037, at *3 (D.N.J. Dec. 5, 2012)). As all elements have been met, the Court grants Plaintiff's Motion for Default Judgment as it relates to liability against LCO.

### B.    Remedies

Having determined that LCO is liable for copyright infringement and intentional removal of CMI, the Court now considers the proper remedy. Plaintiff requests: (1) a permanent injunction preventing LCO from engaging in any purported infringing activity concerning Plaintiff's Product; (2) statutory damages of $60,000; and (3) attorneys' fees of $18,429 and costs of $641.20. (Compl., Prayer for Relief 12-13; Pl.'s Moving Br. 17-19, 23-29.) The Court considers these remedies below.

### 1.    *Permanent Injunction*

Plaintiff maintains that it is entitled to a permanent injunction restraining LCO from engaging in further acts of infringement. (Pl.'s Moving Br. 17-19.) To qualify for a permanent injunction, Plaintiff must meet four elements:

> "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages," prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) "that the public interest would not be disserved by a permanent injunction."

*Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 430 (3d Cir. 2020) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). To that end, the Court must be careful not to presume irreparable harm because injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). In particular, where there is no opposition in the default judgment context, the Court must be cautious in awarding such relief and ensure itself that Plaintiff has properly demonstrated the necessity of a permanent injunction. Otherwise, default judgment could serve as an end run around the "high burden placed on the moving party to establish that an injunction is warranted." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)).

First, the merits of Plaintiff's claim for copyright infringement have been established, satisfying the first element. *See Notte v. New Sushi, LLC*, No. 22-6394, 2024 WL 706783, at *3 (D.N.J. Feb. 20, 2024) (finding the first element met where the court already granted default judgment as to liability). The second element is also met because while a remedy at law would

15

provide some relief, LCO "may continue to deprive Plaintiff of [its] ability to control" its own copyright. *Id.* With respect to the third factor, a balancing of the hardships "weighs strongly in favor of [an injunction] where all that is requested is that [d]efendant comply with the Copyright Act." *Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 769 (D.N.J. 2018) (quoting *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460, 469 (W.D. Pa. 2010)), *aff'd*, 931 F.3d 215 (3d Cir. 2019). Finally, with respect to the public interest, "[p]reliminary injunctions are a common judicial response to the . . . infringement of an apparently valid copyright" because "copyright . . . law protects not only individual parties, but the public at large." *Id.* (first quoting *CMM Cable, Inc. v. Keymarket Commc'ns, Inc.*, 870 F. Supp. 631, 640 (M.D. Pa. 1994); then quoting *Sweet People Apparel, Inc. v. Fame of NY, Inc.*, No. 11-1666, 2011 WL 2937360, at *5 (D.N.J. July 19, 2011)). The Court, accordingly, finds this element met. As all four elements are met, the Court hereby grants Plaintiff's request for a permanent injunction restraining LCO from engaging in further acts of copyright infringement of Plaintiff's Product.

### 2.    *Statutory Damages*

Under the DMCA a party can elect to receive either actual damages or statutory damages. 17 USC § 1203(c). For a violation of 17 U.S.C. § 1202, the Court may award damages between $2,500 and $25,000 for each violative act. *Id.* § 1203(c)(3)(B); *Notte*, 2024 WL 706783, at *3. "[T]he intentional removal/alteration of copyright management information is considered one discrete violative act, while the wrongful distribution of that same work is its own discrete violative act." *Notte*, 2024 WL 706783, at *3 (citing *Reilly v. Commerce*, No. 15-5118, 2016 WL 6837895, at *10-11 (S.D.N.Y. Oct. 31, 2016)).

Plaintiff seeks $5,000 per violation, for a total of $60,000 in statutory damages. (Pl.'s Moving Br. 23-26.) Plaintiff argues that Defendants engaged in at least twelve violative acts by

16

altering Plaintiff's Photograph to create six altered photographs, and then distributing those six photographs. (*Id.* at 24-25.) Plaintiff further argues that twice the statutory minimum is appropriate because LCO acted willfully in removing the CMI and failed to remove the images from the Amazon listing. (*Id.* at 25.)

In general, courts "award statutory damages on the lower end of the damages spectrum." *Notte*, 2024 WL 706783, at *4 (quoting *Wright v. Miah*, No. 22-4132, 2023 WL 6219435, at *13 (E.D.N.Y. Sept. 7, 2023), *R&R adopted*, No. 22-4132, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023)). Here, the Court finds that a lower award is appropriate "where Plaintiff provides no evidence that [LCO's] violations of the DMCA injured [it] in a manner distinct from [LCO's] violation of the Copyright Act." *Id.* (citing *Mantel*, 2019 WL 5257571, at *4). As such, the Court finds that Plaintiff should only be awarded $2,500 per violative act. *See Ward v. Compound Ent. LLC*, No. 18-7268, 2020 WL 4496763, at *3 (S.D.N.Y. Aug. 3, 2020) (awarding $2,500 per violative act where plaintiff's submission for statutory damages was "bare-boned"). Since LCO altered and then distributed six of Plaintiff's photos, LCO committed twelve violative acts. (*See* Compl. ¶¶ 15-17; Klitnick Decl. ¶ 12.); *see also Granger v. One Call Lender Servs., LLC*, No. 10-3442, 2012 WL 3065271, at *5 (E.D. Pa. July 26, 2012) (finding that "[d]efendants posted the infringing product onto the internet on six separate occasions . . . thereby committing six violative acts"). Plaintiff is therefore awarded $30,000 in statutory damages.

### 3.      *Attorneys' Fees and Costs*

The Copyright Act provides, "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs[,] . . . [and] the court may also award a reasonable attorneys' fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Attorneys' fees are not awarded as a "matter of course," instead, they are "awarded to prevailing parties only as a matter of the

court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994). The court is required to "make a . . . particularized case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty*, 510 U.S. at 533). The Supreme Court has identified "several nonexclusive factors for courts to consider, e.g., frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence[.]" *Id.* (quoting *Fogerty*, 510 U.S. at 534 n.19) (internal quotations marks omitted). The Supreme Court has also instructed that the court "should give substantial weight to the objective reasonableness of the losing party's position" and "retains discretion . . . to make an award even when the losing party advanced a reasonable claim or defense." *Id.* at 1983.

Plaintiff argues that attorneys' fees of $18,429 are warranted here because LCO acted willfully "by making an almost identical copy of [Plaintiff's] Product, and using altered versions of [Plaintiff's] photographs to market it." (Pl.'s Moving Br. 27 (emphasis removed).) Plaintiff also submitted detailed billing records to support its request. (*See generally* Ex. B to Pl.'s Moving Br., ECF No. 35-5.) The Court agrees that Plaintiff is entitled to attorneys' fees and costs due to LCO's blatant infringement of Plaintiff's Product and the work that Plaintiff needed to perform to consolidate and transfer the SDNY Action, oppose Defendants' counterclaims, and file the instant action. The Court hereby awards Plaintiff $18,429 in attorneys' fees and $641.20 in costs.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion for Default Judgment is granted. An Order consistent with this Memorandum Opinion will follow.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**